**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (Dkt. 50, filed January 29, 2018)

## I.     INTRODUCTION

On April 28, 2017, plaintiffs Casey Thornton and Carl Jones filed a class action complaint against defendants MSI Computer Corp ("MSI"), Micro-Star International Co., Ltd. ("Micro-Star"), and DOES 1 through 25.[1]  Dkt. 1 ("Compl.").  Following defendants' motion to dismiss the complaint, on August 21, 2017, the Court dismissed without prejudice plaintiffs' complaint for failure to adequately plead their fraud-based claims and claims for breach of contract, breach of implied warranty of merchantability, and common counts.  Dkt. 32 ("Order I").  Plaintiffs then filed a first amended complaint against MSI and Does 1 through 10 on September 11, 2017.  Dkt. 36 ("FAC").  Concluding that plaintiffs inadequately alleged their fraud-based, breach of contract, and warranty claims, the Court dismissed the entirety of plaintiffs' claims on December 7, 2017.  Dkt. 46 ("Order II").

Plaintiffs filed a second amended complaint on December 27, 2017.  Dkt. 47 ("SAC").  In their second amended complaint, plaintiffs allege the following ten claims on behalf of themselves and all others similarly situated: (1) breach of contract; (2) violations of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (3) unfair business practices within the meaning of the California

---

[1]     The Court subsequently dismissed Does 11–25.  Dkt. 13.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | | Date | October 23, 2018 |
| --- | --- | --- | --- | --- |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | | |

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (4) deceptive business practices within the meaning of the UCL; (5) unlawful business practices within the meaning of the UCL; (6) breach of express warranties; (7) breach of implied warranties of merchantability and fitness for a particular purpose; (8) violation of the Song-Beverly Act, Cal. Civ. Code § 1790; (9) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; and (10) common counts of assumpsit, restitution, unjust enrichment, and/or quasi-contract.

On January 29, 2018, defendants filed the instant motion to dismiss the second amended complaint. Dkt. 50 ("Mot."). After numerous continuances, plaintiffs filed an opposition on September 14, 2018, dkt. 62 ("opp'n"); and defendants filed a reply on September 28, 2018, dkt. 63 ("reply"). The Court held a hearing on October 15, 2018. Having carefully considered the parties' arguments, the Court determines as follows.

## II.    BACKGROUND

Plaintiffs allege the following facts.

MSI is a California corporation that designs, manufactures, sells, and distributes computers, including the GT series of laptop computers at issue here. SAC ¶ 7. The Doe defendants allegedly engaged in conduct authorized by officers or managing agents of defendants responsible for the supervision and operations decision relating to design, manufacture, distribution, marketing, advertising, and sale of the laptop products at issue. Id. ¶ 8.

Plaintiffs allege that MSI represented that its GT72 series and GT80 series laptops ("Laptops"), which are special types of gaming laptops, could be upgraded to receive higher end graphics processing units ("GPUs") manufactured by NVIDIA Corp. ("NVIDIA"). Compl. ¶ 11. Plaintiffs specifically allege that

as part of MSI's marketing scheme, promotion and advertising for the GT72/80 laptops, MSI uniformly stated through their website, reviewers' guides, product labeling, packaging, and associated documentation, advertising and/or user fora that the GT72/80 laptops would be able to be upgraded from the NVIDIA GPUs that were included with these laptops, to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

up to two later generation NVIDIA GPUs. Defendants' marketing of the GT72/80 laptops were, in fact, able to conform with these specifications.

Id. ¶ 11. However, plaintiffs contend that the Laptops were not upgradeable, as the Laptops could not be upgraded from NVIDIA's 800 or 900 series of GPUs to the present 1000 series of NVIDIA Pascal GeForce GTX GPUs—a fact that plaintiffs contend MSI has subsequently admitted. Id. ¶ 13. Instead, plaintiffs allege that MSI engaged in a scheme to mislead consumers about the characteristics, qualities, and benefits of the Laptops, concealed material facts regarding the Laptops' upgrade capabilities, and that it has failed to ensure that consumers receive the full benefit of their bargain. Id. ¶¶ 13, 14.

Plaintiffs assert that MSI designed, developed, manufactured, marketed, and sold the Laptops. Id. ¶ 15. The Laptops were first released to consumers in or about November of 2014. Id. Plaintiffs allege that in Fall 2014, NVIDIA also released its 900 series of GE Force GPUs for sale. Id. MSI allegedly made available several reviewers' guides about the benefits and characteristics of these Laptops, containing both types of GPUs, and created and disseminated misleading marketing materials regarding the Laptops' upgradeability. In so doing, plaintiffs allege that defendants also provided express or implied warranties regarding their upgradeability. Id. Specifically, through its sales force and third-party reviewers and reviewers' guides, MSI represented that the Laptops could be upgraded to up to *two* later generations of NVIDIA GPUs. Id. ¶ 16. Plaintiffs provide multiple URLs that lead to webpages which allegedly demonstrate MSI's representations regarding the upgradeability of the Laptops. Id. Plaintiffs also reference online reports from reviewers who spoke with MSI representatives and published videos with MSI representatives either speaking or present. Id. ¶ 16. These reports allegedly confirm that MSI uniformly represented that the Laptops were upgradeable. Id.

Plaintiffs allege that MSI's and its representatives' statements were material representations and statements, both to plaintiffs and other presumptive members of the class because a gaming laptop can become obsolete in two years or less based on rapid changes in GPU processing speed and capability, in addition to video game graphics processing demands,. Id. ¶ 17. At the same time, gaming laptops typically cost over a thousand dollars, whereas a new GPU only costs several hundred dollars. Id. For this reason, plaintiffs allege, MSI could advertise and promise these laptops as being for a

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

particular purpose—i.e., upgradeable—due to these rapid changes in video game design and processor technology. Id.

Before plaintiffs purchased their MSI computers, plaintiffs were exposed to materials that referenced either generally or specifically the ability to upgrade the Laptops to later generations of NVIDIA GPUs. Id. ¶ 18. Plaintiffs allege that they reasonably construed these statements as uniform representations by MSI that the identified laptops would be upgradeable to up to two generations of NVIDIA GPUs . Id. ¶ 19. In response to these alleged representations, plaintiffs paid between $1,700 and $3,000 for their Laptops, which they allege is a premium over other comparable laptops. Id. ¶ 19. Specifically, plaintiff Thornton purchased an MSI GT72 Dominator 6QD laptop, containing a single NVIDIA GeForce GTX 970 GPU, from the retailer Fry's Electronics in San Diego, California for $1,784.91 on or about January 1, 2016. Id. ¶ 4. Plaintiff Thornton registered the computer with MSI on or about January 2, 2016. Id. Plaintiff Jones purchased an MSI GT80S Titan SLI-012 laptop, containing two NVIDIA GeForce GTX 970M GPUs, through Amazon.com for $3,047.91 on or about January 22, 2016. Id. ¶ 5. Plaintiff Jones registered the computer with MSI on or about January 25, 2016. Id. Some putative class members paid up to $5,000 for various iterations of the Laptops. Id. ¶ 23.

Despite MSI's allegedly uniform representations to the contrary, plaintiffs assert that the Laptops did not yield the advertised and promised benefits. Id. ¶ 24. Plaintiffs allege the laptops could not be upgraded to even one generation. Id. ¶ 20. Beginning in approximately May 2016, NVIDIA made available the Pascal GeForce GTX 1000 series of NVIDIA GPUs. Id. Plaintiffs decided to upgrade their laptops in May 2016 to this new 1000 series, but subsequently learned in August 2016 that they could not do so and that their laptops were in fact not upgradeable to the next generation of NVIDIA GPUs. Id. ¶ 6. Plaintiffs also allege that MSI has since admitted that its manufacture or design of the Laptops will not permit an upgrade to this series of GPUs. Id. ¶ 24. Plaintiffs allege that, in response to pre-litigation demands, MSI admitted in November 2016 that it "originally planned to honor our agreement to provide an upgrade kit option to all those who wished to upgrade graphics card. Due to unforeseen hardware limitation with the new NVIDIA GeForce 10-series graphic card, we were not able to provide this [upgrade] option." Id.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

Plaintiffs allege that, according to its website, MSI designs and manufactures all of its products in-house, and that MSI offered for sale its own version of the Pascal GeForce GTX 1000 series of GPUs beginning May 2016. Id. ¶ 25. Accordingly, based on defendants' line of business, plaintiffs allege that MSI would have known months before the official release the design specifications of the next generation NVIDIA GPUs. Id. Moreover, plaintiffs allege that in March of 2014, prior to the first public sale of the Laptops, NVIDIA announced at a conference that it was reconfiguring its NVIDIA GPU roadmap and would move the release of the Pascal series of GPUs to 2016. Id. According to plaintiffs, such an announcement would put MSI on notice that a significant change in GPU architecture design would be incorporated into the next generation of NVIDIA GPUs. Id. In addition to this, plaintiffs allege that NVIDIA provides its GPU design specifications to computer and GPU manufacturers, such as MSI, months before actual public release of the devices. Id. ¶ 26. Consequently, plaintiffs allege that, because of changes in hardware and GPU architecture design that defendants were aware of, defendants would have known that their statements about upgradeability were misleading. Id. ¶ 25.

As a result of the likelihood that MSI knew that the Laptops could not in fact be upgradeable to the next generation of NVIDIA GPUs, plaintiffs contend that defendants uniformly failed to disclose the true specifications of and latent defects in the Laptops. Id. ¶ 27. Plaintiffs allege that MSI's misstatements and uniform omission of fact about the Laptops' upgradeability was material and misleading to reasonable consumers. Id. Because the upgradeability claims were included in advertisements, marketing, reviewers' guides labeling, packaging, documents, and agreements accompanying these Laptops, a reasonable consumer purchasing these Laptops would likely be misled into believing that these Laptops were upgradeable to two later generation NVIDIA GPUs. Id. ¶ 28. Plaintiffs allege that they purchased the Laptops in substantial part based on the false belief that these computers would be upgradeable and function as advertised, explaining that fast-changing technology makes upgradeability material. Id. ¶ 28–30.

Plaintiffs assert that MSI later acknowledged that that the laptops could not be upgraded, and stated that "in order to keep our original promise of upgradeable GPU's, MSI will be offering a trade-in program" for specific laptop models. Id. ¶ 33. However, this program required a customer to pay a premium of at least $600 to over $2000, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

thus plaintiffs allege that plaintiffs and class members still cannot receive the benefit of their original bargain under this trade-in program.  Id. ¶ 36.

## III.  LEGAL STANDARDS

### A.  Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint.  Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

**B.      Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting a claim for fraud be pleaded with particularity. Rule 9(b) applies not just where a complaint specifically alleges fraud as an essential element of a claim, but also where the claim is "grounded in fraud" or "[sounds] in fraud." Vess v. Ciba–Geigy Corp. U.S.A., 317 F.3d 1097, 1103–04 (9th Cir. 2003). A claim is said to be "grounded in fraud" or "sounds in fraud" where a plaintiff alleges that defendant engaged in fraudulent conduct and relies solely on that conduct to prove a claim. Id. at 1103. "In that event, . . . the pleading of that claim as a whole must satisfy the particularity requirement of [Rule] 9(b)." Id. at 1103–04. However, where a plaintiff alleges claims grounded in fraudulent and non-fraudulent conduct, only the allegations of fraud are subject to heightened pleading requirements. Id. at 1104.

A pleading is sufficient under Rule 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Walling v. Beverly Enters., 476 F.2d 393, 397 (9th Cir. 1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, Rule 9(b) requires a plaintiff to "identify the 'who, what, when, where and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent conduct], and why it is false.'" Cafasso, ex rel. United States v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010)).

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

### C.    Rule 15(a)

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).  This policy is applied with "extreme liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); Moss v. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.    DISCUSSION

### A.    Plaintiffs' Fraud-Based Claims and Pleading Pursuant to Rule 9(b)

Defendants move to dismiss plaintiffs' CLRA and UCL claims.  Defendants argue that plaintiffs fail to plead their claims with the requisite particularity, as required by Rule 9(b).  Mot. at 5.  In particular, defendants argue that plaintiffs fail to identify the who and how of defendants' misrepresentations to plaintiffs.  Mot. at 6.  Defendants argue that the second amended complaint only alleges that plaintiffs relied on representations made by third parties, and that plaintiffs fail to plead that MSI made misrepresentations to these third parties with the intent or reasonable expectation that the third parties would repeat these misrepresentations to plaintiffs.  Id. at 6–7.  MSI also argues that the statements plaintiffs relied on did not pertain to the laptop Plaintiff Thornton purchased, and that plaintiffs mischaracterize the alleged misrepresentations.  Id. at 8–9. Regarding plaintiffs' claim for omission, defendants argue that "it is not entirely clear from the SAC what, specifically, plaintiffs allege MSI should have disclosed," and argue that "'California courts have generally rejected a broad obligation to disclose,'" requiring disclosures only about "matters of product safety."  Mot. at 12–13 (quoting Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012)). Plaintiffs respond that they have pled claims with sufficient particularity because they established the "who, what, where, when and how" of their allegations.  Opp'n at 9.  Plaintiffs further argue that defendants' arguments regularly go to questions of fact, which are not to be decided at the pleading stage.  Id. at 12.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

California's Consumer Legal Remedies Act ("CLRA") broadly prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The statute identifies 26 different unlawful methods of unfair competition or deceptive acts or practices. Id. Similarly, California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. and Prof. Code § 17200. Plaintiffs allege defendants violated these statutes because "despite being aware of the actual specifications of the GT 72/80 laptops . . . Defendants advertised, marketed, and/or sold the GT72/80 laptops to consumers by advertising characteristics, uses, and benefits as to the upgradeability of these laptops that were false, misleading, and/or likely to mislead consumers." SAC ¶ 37. Plaintiffs allege that they acted upon these material misrepresentations and omissions by purchasing the laptops advertised by defendants and have subsequently suffered injury. Id. ¶ 38.

In its prior order, the Court found that plaintiffs' CLRA and UCL claims sounded in fraud, and that therefore plaintiffs' pleadings must comply with the heightened pleading standard of Rule 9(b). Order I at 10. Assessing plaintiff's first complaint under the 9(b) standard, the Court initially found that plaintiffs' fraud-based claims adequately established "who," "how," "what," and "when," but failed to identify "where" the alleged misconduct occurred. Id. Specifically, the Court found that the "where" requirement demanded more specific allegations about the websites, promotional materials, and product documentation that allegedly contained the alleged misrepresentations. Id. at 11. The Court thus dismissed plaintiffs' fraud-based claims with leave to amend.

Following plaintiffs' submission of its FAC, defendants argued that plaintiffs' first amended complaint added specifics that effectively "plead plaintiffs out of a claim" because, although plaintiffs added specific instances of alleged misrepresentations about upgradeability, plaintiffs' new pleadings did not show that the laptops that plaintiffs purchased were the laptops advertised to possess the upgrade feature. Order II at 8. Agreeing with defendants, the Court found uncertainty as to which laptops MSI's alleged upgrade statements referred— the laptops which plaintiffs purchased or other models— the Court therefore concluded that "plaintiffs must plead which particular laptops they purchased within the GT72 and GT80 series, and which particular GPUs those laptops contained." Id. at 9. The Court therefore dismissed plaintiffs' claims for the second time, with leave to amend.

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

Plaintiffs' second amended complaint cures these defects. Plaintiffs' second amended complaint specifically identifies the laptop models plaintiffs purchased, as well as the GPU models included in the laptops. Plaintiff Thornton purchased an MSI GT72 Dominator 6QD laptop, containing a single NVIDIA GeForce GTX 970 GPU. Id. ¶ 4. Plaintiff Jones purchased an MSI GT80S Titan SLI-012 laptop, containing two NVIDIA GeForce GTX 970M GPUs. Id. ¶ 5. Plaintiffs further allege that defendants' alleged misrepresentations pertained to these models. CITE.

Having pled the specific models that plaintiffs purchased, and having alleged that they purchased these laptops after relying on the material misrepresentations and omission made by defendants, plaintiffs have adequately pled their CLRA and UCL claims because they have pled facts to explain the "who, what, where, when, and how" of their claims. Although defendants argue that the alleged misrepresentations identified by plaintiffs pertain to different models of laptops than the model plaintiff Thornton purchased, the Court disagrees. Certain statements plaintiffs identify in their second amended complaint reference models of GT72/80 laptops that plaintiff Thornton did not purchase. See, e.g., SAC ¶ 16(e) (identifying a statement made on a webpage for the GT72 2QE Dominator Pro laptop model). However, plaintiffs also identify statements that reference the GT72/80 laptop series generally, which include plaintiff Thornton's model. For example, specifically regarding the GT72 laptops, one of which plaintiff Thornton purchased, plaintiffs identify a statement on MSI's website from January 2015 which said, "if you purchase a GT72, which actually comes with the 980M or 970M, you don't need to feel like you've missed on something because it will actually be upgradeable to the next generation NVIDIA GPUS. . . So, the GT/72 is a properly upgradeable gaming notebook from MSI." SAC ¶ 16(c). While defendants argue that this statement was found on the webpage of a specific model of the GT72, which plaintiff Thornton did not purchase, that does not change that the statement *itself* references the *entirety* of the GT72 lines. Plaintiffs also allege that a MSI's webpage featured a product banner specifically claiming that the GT72 series of laptops were "Made to Upgrade – future proof of your gaming with NVIDIA® GeForce® GTX MXM Graphics," and linked to a manual entitled "GT72 GTX 900M series MXM upgrade." Id. ¶ 16(d). As yet another example, plaintiffs identify a statement from MSI which states, "In order to keep our original promise of upgradeable GPU's, MSI will be offering a trade-in program for those who currently have GT72/GT80 models with GTX 800 and 900 series graphics inside. . . ." Id. ¶ 33. These examples are not a complete catalogue of the alleged

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

misrepresentations that plaintiffs include in their second amended complaint which reference the broader GT72/80s models. These allegations adequately plead that the laptops plaintiffs purchased were among those allegedly represented to be upgradeable. While defendants insist that these statements are more model-specific than plaintiffs allege, and that plaintiffs mischaracterize the alleged misrepresentations, mot. at 8–9; on a motion to dismiss, the Court must accept the allegations of plaintiffs' complaint as true. The Court thus finds that plaintiffs have pled facts that plausibly allege that defendants' alleged misrepresentations pertained to the laptops plaintiffs purchased.[2]

The Court finds defendants' other arguments to dismiss plaintiffs' CLRA and UCL unconvincing as well. Defendants argue that plaintiffs only identify representations made by third parties; however, the Court finds that plaintiffs also claim alleged misrepresentations on defendants' own website, on defendants' product packaging, and by defendants' agents. See, e.g., SAC ¶ 16(g) (describing MSI packaging that allegedly states "Easy Upgrade – Next Generation GPU ready"); ¶ 17(a) (quoting an article in which MSI representatives allegedly stated that "they are now guaranteeing support for at least the next two GPU cycles"); ¶ 33 (presenting a statement in which defendants allegedly express their desire to "keep [their] original promise of upgradeable GPU's"). Accordingly, the Court finds that plaintiffs have adequately alleged that defendants made misrepresentations about the laptops plaintiffs purchased.

Additionally, while defendants assert that "'California courts have generally rejected a broad obligation to disclose,'" requiring disclosures only about "matters of product safety," mot. at 12–13 (quoting Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1141 (9th Cir. 2012)); this argument ignores that an omission claim may also be stated

---

[2] At oral argument, counsel for defendants inquired whether defendants could assume that the Court was granting dismissal as to allegations not expressly referenced by the Court in its order. As the Court explained at oral argument, when assessing the adequacy of a claim, the Court considers the entirety of plaintiffs' claim, not particular paragraphs. The fact that the Court has not addressed a particular paragraph does not indicate that the paragraph is not relevant to plaintiffs' pleading. Accordingly, while the Court expects the experienced counsel in this case to be able to agree as to what discovery is relevant, should the parties disagree, the Court leaves to the assigned magistrate judge the decision as to what discovery may be relevant.

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

where "the omission [is] contrary to a representation actually made by the defendant," Hodsdon v. Mars, Inc., 891 F.3d 857, 865 (9th Cir. 2018) (quoting Daugherty v. Am. Honda Motor Co., 144 Cal. App. 4th 824, 835 (2006), as modified (Nov. 8, 2006)). In this case, plaintiffs plead that defendants allegedly knew, and should have disclosed, the material fact that the Laptops could not be upgraded, in light of defendants' representation that the laptops were upgradeable. In so doing, plaintiffs have adequately pled their omission claims. Defendants' allegation that they did not possess exclusive knowledge of facts to be disclosed is a factual question that is not a basis to dismiss the complaint. Reply at 11.

With regard to plaintiffs' CLRA claims in particular, having concluded that plaintiffs adequately allege that defendants misrepresented the upgradeability capabilities of the laptops that plaintiffs purchased, the Court does not find, as defendants argue, that plaintiffs' allegations "undermine their CLRA claims." Mot. at 14. To the contrary, plaintiffs allege the precise misconduct that the CLRA prohibits. The CLRA prohibits representing that "goods or services" possess a particular quality, use, right, benefit, standard, etc. that the advertised good or service does not contain. See Cal. Civ. Code §§ 1770(a)(5), (7), (14). With regard to Section 1770 (a)(16), which prohibits "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not," the Court finds that plaintiffs have adequately alleged that defendants represented the laptops were upgradeable and that defendants initially agreed to perform the upgrade, even when the laptops could not be upgraded. SAC §§ 11, 24; Opp'n at 13–14. Even if plaintiffs claim that defendants later admitted that the laptops could not be upgraded, plaintiffs still alleged facts to the effect that defendants first claimed they could be upgraded and later agreed to upgrade the laptops. This substantiates plaintiffs' claim.

Plaintiffs have also adequately plead their UCL claims. Given the alleged misrepresentations and omissions, plaintiffs adequately allege their "unfair" and "deceptive" business practices claims. SAC §§ 71–73; 78–80. Additionally, having concluded that plaintiffs properly allege a CLRA violation, this alone serves as a predicate offense for plaintiffs' UCL "unlawful" business practice claim— notwithstanding plaintiff's other claims. Cal. Bus. & Prof. Code § 17200, et seq.; Warner v. Tinder Inc., 105 F. Supp. 3d 1083, 1090 (C.D. Cal. 2015) (citing Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999)) (calling the

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

UCL "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law").

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss with regard to plaintiffs' second through fifth claims for relief.

### B.    Plaintiffs' Breach of Contract Claim

Defendants also move to dismiss plaintiffs' breach of contract claim because plaintiffs purchased their laptops from third parties. Mot. at 11. Defendants cite Ninth Circuit law to explain that, "an end consumer . . . who buys from a retailer is not in privity with a manufacturer." Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008). Plaintiffs argue in response that because defendants made representations about the "upgradability feature on their packaging, advertising, and product description, MSI was offering to sell consumers a gaming laptop," which plaintiffs accepted by purchasing the computers. Opp'n at 14–15.

After reviewing plaintiffs' initial complaint, the Court ruled that plaintiffs failed to allege how defendants extended the offer to plaintiffs, and how plaintiffs accepted. Order I at 14. Accordingly, the Court found that plaintiffs did not appear to be in privity with defendants. Id. Plaintiffs then revised their complaint, to allege how the product advertising constituted a specific offer, which invited performance of a specific act and left nothing for negotiation. Plaintiffs accepted the offer by purchasing the computers and paying consideration. Plaintiff further alleged that defendants acknowledged that it could not honor its agreement and commitment. Order II at 12.

However, the Court found that plaintiffs first amended complaint still did not allege the requisite facts because plaintiffs did not provide a basis for finding that defendants made an offer to plaintiffs regarding the upgradeability of their specific laptop models. The Court therefore dismissed plaintiffs' claim for that reason alone. Order II at 13.

Having now specified the laptops they purchased, and having alleged that defendants' misrepresentations pertained to the laptops plaintiffs purchased, the Court finds that plaintiffs state a claim for breach of contract. Although defendants cite Clemens for the proposition that "an end consumer . . . who buys from a retailer is not in

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

privity with a manufacturer," defendants ignore the next sentence of that case, which specifies that "[s]ome particularized exceptions to the rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer." 534 F.3d at 1023. That first exception applies here.  In addition, as plaintiffs argue, the California Supreme Court has held that,

> [v]arious advertisements involving transactions in goods also have been held to constitute offers where they invite particular action. For example, . . . an advertisement stating that anyone who purchased a 1954 automobile from a dealer could exchange it for a 1955 model at no additional cost constituted an offer that was accepted when the plaintiff purchased the 1954 vehicle.

Opp'n at 14 (quoting Donovan v. RRL Corp., 26 Cal. 4th 261, 272 (2001), as modified (Sept. 12, 2001)).  Plaintiffs here allege that defendants advertised that they could upgrade their laptops, which constituted an offer, and that plaintiffs accepted this offer by purchasing the laptops. SAC ¶¶ 50–52.  They further allege that defendants have breached the agreement by failing to allow consumers to upgrade their computers, as promised.  Id. ¶ 56.  This states a valid breach of contract claim.  Accordingly, defendants' motion to dismiss plaintiffs' breach of contract claim is **DENIED**.

### C.     Plaintiffs' Breach of Warranty Claims

#### 1.     Express Warranty Claim

Defendants also seek to dismiss plaintiffs' claim for breach of the express warranty.  Defendants argue that plaintiffs' allegations fail to support a reasonable inference that defendants represented that the laptops were upgradeable to up to two generations of NVIDIA GPUs.  Mot. at 17.[3]  Plaintiffs respond, arguing that "statements made in an advertisement or promotion . . . can constitute a separate and actionable express warranty under California law."  Opp'n at 17.

---

[3] The Court observes that defendants are attempting to relitigate certain aspects of their previous motion, which the Court has already denied.  The Court cautions defendants that it should not renew motions that have already been denied.

**CIVIL MINUTES – GENERAL**     **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|

| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. |
|-------|---------------------------------------------------------------------|

Under California law, "express warranties are created by (1) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain, and (2) any description of the goods which is made part of the basis of the bargain." Keith v. Buchanan, 173 Cal. App. 3d 13, 19 (Ct. App. 1985) (citing Cal. Com. Code § 2313); see also Norcia v. Samsung Telecommunications Am., LLC, 845 F.3d 1279, 1288 (9th Cir. 2017), cert. denied, 138 S. Ct. 203 (2017) ("A seller is bound by any express warranties given to the buyer, including statements in written warranty agreements, advertisements, oral representations, or presentations of samples or models.").

After reviewing plaintiffs' initial complaint, the Court denied MSI's motion to dismiss the express warranty claim. Order I at 15. The Court found that plaintiffs' allegations that written materials accompanying the Laptops, along with defendants' advertisements, adequately identified the exact terms of MSI's alleged upgradeability promise. Id. (citing Stearns v. Select Comfort Retail Corp., 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (noting breach of express warranty claim "must describe the exact terms of the warranty")). The Court further found that these allegations provided MSI with meaningful notice of the warranty promises that plaintiffs allege MSI undertook— namely, that the Laptops would be upgradeable to two future generations of NVIDIA GPUs. Id. However, upon reviewing plaintiffs' first amended complaint, the Court later dismissed plaintiffs' claim for breach of express warranty, finding that the allegations failed to detail that defendants' alleged representations referred to the specific laptop models that plaintiff purchased. Order II at 14.

Now that plaintiffs' second amended complaint specifies the laptops that plaintiffs purchased and claims that defendants' alleged misrepresentations applied to those models with the GPUs in those laptops, the Court finds that plaintiffs have adequately alleged a breach of express warranty claim. Defendants' arguments about the precise terms of the warranty and what can constitute a defect under it are not to be determined at the pleading stage. The Court therefore **DENIES** defendants' motion to dismiss plaintiffs' breach of express warranty claim.

### 2.     Implied Warranty Claims

Plaintiff alleges breach of both the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. Defendants move to dismiss both on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. |

the grounds that defendants were not in privity with plaintiffs. Mot. at 19. Defendants also argue that the merchantability claim should be dismissed because merchantability only "provides for a minimum level of quality" and plaintiffs do not allege that the laptops lacked this minimum level of quality. Id. at 21. In addition, defendants argue that the fitness for a particular purpose claim should fail because plaintiffs purchased the laptops for the particular purpose of "computer gaming," and the laptops provided that service. Id. at 22. Plaintiffs argue that the reneged promise of upgradeability substantiates both the implied warranty of merchantability and fitness for a particular purpose. Opp'n at 19.

###           a.          Implied Warranty of Fitness for a Particular Purpose

An implied warranty of fitness for a particular purpose arises where "(1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014) (citing Keith v. Buchanan, 173 Cal. App. 3d 13, 25 (1985)). The Court previously denied defendants' motion to dismiss plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose after finding that plaintiffs adequately alleged that the particular, represented purpose of the laptops was their upgradeability. Order I at 20. At that time, the Court also concluded that vertical privity was not required in this case, in light of Gilbert Financial Corporation v. Steelform Contracting Co., 82 Cal. App. 3d 65 (1978), which establishes an exception to the privity requirement that applies when a plaintiff is the intended beneficiary of implied warranties in agreements linking a retailer and a manufacturer. However, after finding that plaintiffs' first amended complaint failed to allege that the defendants' misrepresentations applied to the specific laptop models plaintiffs purchased, the Court denied plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose.

Having now alleged that defendants' alleged misrepresentations were made in connection with the specific laptops plaintiffs purchased, plaintiffs have properly alleged their claim. Although defendants continue to argue that vertical privity is necessary in order to allege an implied warranty claim, mot. at 20; the Court finds that, in light of Gilbert's holding, privity is not required where plaintiff was the intended beneficiary of

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|

| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. |
|-------|---------------------------------------------------------------------|

implied warranties in agreements linking a retailer and a manufacturer. 82 Cal. App. 3d at 69. Additionally, although defendants contend that plaintiffs fail to allege an actionable "particular purpose" for which they purchased the laptops, reply at 22; the Court finds otherwise. Plaintiffs have specifically identified the upgradeability function as the particular purpose. SAC ¶ 17. This distinguishes plaintiffs from the plaintiff in Smith v. LG Elecs. U.S.A., Inc., No. C 13-4361 PJH, 2014 WL 989742 (N.D. Cal. Mar. 11, 2014)—a case that defendants emphasized at oral argument. In dismissing a plaintiff's claim for breach of the implied warranty of fitness for a particular purpose, stemming from her washing machine's alleged failure to function as a "High Efficiency" machine, the Smith Court explained that the claim failed because "plaintiff ha[d] identified no 'particular purpose' for which she purchased the washing machine." Id. Plaintiffs' case is therefore distinguishable, since they identify upgradeability as the particular purpose.

The Court therefore **DENIES** defendants' motion to dismiss plaintiffs' breach of the implied warranty of fitness for a particular purpose claim.

### b.    Implied Warranty of Merchantability

Pursuant to California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314. To meet this minimum standard of merchantability, goods must, among other things, "[p]ass without objection in the trade under the contract description," and be "fit for the ordinary purposes for which such goods are used." Id. § 2314(2)(a) & (c). "[A] plaintiff claiming breach of an implied warranty of merchantability must show that the product did not possess even the most basic degree of fitness for ordinary use." Keegan v. American Honda Motor Co., Inc., 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012). The Court previously dismissed this claim because plaintiffs failed "to describe the ordinary purpose of the laptops . . . or why MSI's representations have affected the core functionality of the Laptop." Order I at 21. In addition, the Court found that plaintiffs did not allege that MSI's representations prevented the laptops from meeting a minimum level of quality. Id.

Plaintiffs allege that defendants breached the implied warranty of merchantability because defendants' laptops were "missing a key promoted characteristic of the device"—the ability to upgrade. SAC § 104. However, plaintiffs do not allege that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

laptops were otherwise unusable or lacked "even the most basic degree of fitness for ordinary use"—ostensibly gaming. Keegan, 838 F. Supp. 2d at 945. Plaintiffs cite the California case, Hauter v. Zogarts, to argue that "Merchantability has several meanings . . . : the product must '[c]onform to the promises or affirmations of fact made on the container or label,' and must be 'fit for the ordinary purposes for which such goods are used.'" 14 Cal. 3d 104, 117–18 (1975) (internal citations only). However, in that case, the product at issue was a device advertised as a training tool which failed to perform its stated training purpose; thus the "non-merchantability in [Hauter] rested upon the fact that the device . . . failed when used as a training device by a beginner golfer—the precise use contemplated for the product." Am. Suzuki Motor Corp. v. Superior Court, 37 Cal. App. 4th 1291, 1297–98, (1995), as modified on denial of reh'g (Sept. 21, 1995).

In this case, the Court requested oral argument on whether upgradeability constitutes "the precise use contemplated for the product" which can trigger the implied warranty of merchantability. After hearing the parties' argument, the Court finds that plaintiffs fail to allege that "the product did not possess even the most basic degree of fitness for ordinary use." Keegan, 838 F. Supp. 2d at 945. As represented in the complaint, the laptops functioned as gaming machines, which was the ordinary use.

The Court therefore **GRANTS** defendants' motion to dismiss this claim, and **DISMISSES** this claim *with prejudice*.

### 3.    Song-Beverly Warranty Act Claim

Plaintiffs assert claims under California's Song-Beverly Warranty Act on the basis of defendants' alleged breach of express warranty and of implied warranties of merchantability and fitness for a particular purpose. SAC ¶ 118. Defendants argue that this claim should be dismissed in its entirety.

First, defendants argue that plaintiffs' Song-Beverly claim regarding defendants' breach of the express warranty should be dismissed because Song-Beverly defines an express warranty as a "written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance." Mot. at 19 (citing Cal. Civ.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

Code § 1791.2 (West)). Defendants argue that the advertising representations plaintiffs identify do not fit into this definition. Accordingly, because the express warranty issued by MSI did not discuss "upgradeability," defendants contend that plaintiffs' alleged breach relates to an undertaking that was not promised. Mot. at 19.

Plaintiffs cite no authority that the Song-Beverly Act has been interpreted to include non-written statements, and the Court finds that the plain language of the express warranty provision does limit warranties to those contained in written statements. Cal. Civ. Code § 1791.2 (West). However, the limited warranty which MSI extends to its laptop customers states that MSI extends warranty service "only when the Product purchased becomes defective under proper usages." SAC, Ex 4. The Court thus requested oral argument as to whether the Laptops' lack of upgradeability constitutes a "defect under proper usage." Id. Having heard oral argument on the issue, the Court concludes that upgradeability was not a "defect" contemplated by the written, express warranty. Accordingly, the Court **GRANTS** defendants' motion on this prong of the Song-Beverly Act claim, ***with prejudice***.

With regard to plaintiffs' implied warranty claims under Song-Beverly, the parties appear to agree that the substantive elements for the Song-Beverly Act mirror those of the California Commercial Code. Opp'n at 23; Reply at 21, 23. The Court finds that plaintiffs adequately state their claim for breach of the implied warranty of fitness for a particular purpose under a Song-Beverly Act. Although defendants continue to argue that lack of privity bars plaintiffs' claim, the Court agrees that "the weight of authority that the plain language of section 1792 of the Song–Beverly Act does not impose a similar vertical privity requirement." Ehrlich v. BMW of N. Am., LLC, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) (listing cases that have found privity unnecessary for a Song-Beverly implied warranty claim). Therefore, the Court **DENIES** defendants' motion to dismiss plaintiffs' Song-Beverly claim on the basis of the implied warranty of fitness for a particular purpose.

As with the state law claim, the Court requested oral argument as to whether the alleged lack of upgradeability can give rise to a claim that defendants breached the implied warranty of merchantability under the Song-Beverly Act. Under the Act, the implied warranty of merchantability,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. |

means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description. (2) Are fit for the ordinary purposes for which such goods are used. (3) Are adequately contained, packaged, and labeled. (4) Conform to the promises or affirmations of fact made on the container or label."

Cal. Civ. Code § 1791.1 (West). Here, as with the California Commercial Code warranty claims, "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." Atkinson v. Elk Corp. of Texas, 142 Cal. App. 4th 212, 228 (2006); see also Keegan, 838 F. Supp. 2d at 945 (quoting Mocek v. Alfa Leisure, Inc., 114 Cal .App. 4th 402, 406 (2003)) (explaining that a Song-Beverly "plaintiff claiming breach of an implied warranty of merchantability must show that the product "did not possess even the most basic degree of fitness for ordinary use."). Having found that upgradeability did not constitute the laptops' "ordinary purpose," the Court **GRANTS** defendants' motion to dismiss plaintiffs' Song-Beverly claim on the basis of the implied warranty of merchantability, ***with prejudice***.

### 4.    **Magnuson-Moss Warranty Act Claim**

The Magnuson-Moss Warranty Act states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C.A. § 2310 (West). The Ninth Circuit has stated, and the parties appear to agree, that "the claims under the Magnuson–Moss Act stand or fall with his express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson–Moss Act claims." Clemens, 534 F.3d at 1022. Accordingly, having found that plaintiffs have adequately stated state claims for breach of express warranty and breach of implied warranty of fitness for a particular purpose under the California Commercial Code, the Court **DENIES** defendants' motion to dismiss these claims. The Court, having heard oral argument on the implied warranty of merchantability, **DISMISSES** plaintiffs' Magnuson-Moss claim on that ground ***with prejudice***.

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|----------|------------------------|------|------------------|

| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. |
|-------|--------------------------------------------------------------------|

### C. Plaintiffs' Common Counts

Alternatively, plaintiffs assert claims for relief based on assumpsit, implied contract based on principles of restitution and unjust enrichment, or quasi-contract. Compl. ¶ 131. Plaintiffs allege that defendants have been unjustly enriched by payments and resulting profits obtained as a result of plaintiffs' payment for the Laptops. Id. ¶¶ 135–36. Additionally, plaintiffs allege that defendants entered into a series of implied at law or quasi-contracts, either directly or indirectly, at the expense of plaintiffs and class members under agreements in assumpsit. Id. ¶ 135. Finally, plaintiffs contend that, under principles of restitution recognized by California law, it would be inequitable for defendants to retain benefits conferred by plaintiffs and class members, and therefore defendants should not be permitted to retain these benefits. Id. ¶ 136–37.

"The essential allegations of a common count are (1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 460 (1997). Defendants move to dismiss plaintiffs' common counts because: (1) plaintiffs fail to identify a sum certain that defendant MSI owes them; (2) plaintiffs' claims for unjust enrichment and restitution are not recognized by California law as causes of action, and regardless, these claims are duplicative of plaintiffs' other claims; and (3) plaintiffs cannot allege a claim based on quasi-contract as an alternative to a claim based on express contract or warranty. MTD at 19–21.

In its prior orders, the Court dismissed these common count claims because plaintiffs failed to allege that defendants owed them and class members a specific sum, order I; and because plaintiffs failed to allege that the specific laptop models they purchased allegedly had the upgradeability features, order at 15. Now, plaintiffs have alleged specific sums owed by defendants— $1,784,91 for plaintiff Thornton and $3,047.91 for plaintiff Jones— which represents the price they paid for their laptops. SAC ¶¶ 4–5, 135. In addition, as noted, the plaintiffs have specifically claimed that the alleged misrepresentations about upgradeability pertained to their laptop models. Defendants argue that defendants cannot owe plaintiffs the entire sum they paid for the laptops, because plaintiffs do not argue that their laptops have no value. Mot. at 22.

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:17-cv-03231-CAS-AFMx | Date | October 23, 2018 |
|---|---|---|---|
| Title | CASEY THORNTON ET AL. v. MICRO-STAR INTERNATIONAL CO., LTD. ET AL. | | |

However, that is an issue as to damages that is not appropriate at this phase of proceedings.

Accordingly, plaintiffs adequately plead their common count claims, and the Court **DENIES** defendants' motion to dismiss those claims.

## V.    CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to dismiss plaintiffs' breach of contract claim; fraud-based claims under the CLRA and UCL; claim for breach of express warranty under the California Commercial Code and the Magnuson-Moss Warranty Act; breach of implied warranty of fitness for a particular purpose claims; and common counts.  The Court **DISMISSES** *with prejudice* plaintiffs' claim for breach of express warranty under the Song-Beverly Act, and plaintiffs' claims for breach of implied warranty of merchantability under the California Commercial Code, under the Song-Beverly Act, and under the Magnuson-Moss Warranty Act.

IT IS SO ORDERED.

|  | 00 | 00 |
|---|---|---|
| Initials of Preparer | CMJ | |